```
                   UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION

MICHELLE REIDY,

      Plaintiff,


   v.                              Case No: 2:13-cv-589-FtM-29DNF


STATE OF FLORIDA,
DEPARTMENT OF CORRECTIONS,

      Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on review of Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Cause of Action (Doc. #31) and Memorandum of Law in Support (Doc. #32) filed on February 10, 2014. Plaintiff filed a Response to Defendant's Motion to Dismiss (Doc. #34) and Memorandum of Law in Opposition (Doc. #33) on February 24, 2014. For the reasons stated below, the motion is denied.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**II.**

Plaintiff Michele Reidy (Plaintiff or Reidy) has filed a three-count Amended Complaint (Doc. #28) against the Florida Department of Corrections (DOC). Reidy asserts that the DOC unlawfully discriminated and retaliated against her in violation of Title VII. (Doc. #28, ¶¶ 21-34.) Reidy further alleges that the DOC negligently retained employees whom the DOC knew had sexually harassed and were sexually harassing Reidy, as well as unlawfully discriminating and retaliating against her. (Id. at ¶¶ 35-43.) The underlying facts, as set forth in the Amended Complaint, are as follows.

In or about the end of 2010, Michele Reidy, a corrections officer with the DOC, began working at the DOC's Fort Myers Work Camp (Camp) in Lee County, Florida. (Id. at ¶¶ 10-11.) Reidy asserts that shortly after arriving at the Camp, the DOC, through Camp supervisors and employees, discriminated against her based on sex, creating a pervasive, hostile work environment. (Id. at ¶¶ 12-13.)

Reidy asserts that Camp supervisors and co-workers repeatedly demeaned and insulted her with a steady stream of verbal and physical abuse. DOC employees repeatedly made sexual gestures, sexual propositions and requested sexual favors from Reidy. (Id. at ¶¶ 15.) Plaintiff asserts that DOC officers attempted to "set [Reidy] up with an inmate." (Id.) Further, DOC employees

3

repeatedly called Reidy a "bitch," a "whore," and accused her of having sex with co-workers and Camp inmates. (Id.) On multiple occasions, DOC employees removed all the chairs from the lunch room, and told Reidy: "You are a fucking woman and you don't need to sit for your lunch break. You should be barefoot and pregnant and not working." (Id.)

Reidy further asserts that Corrections Officer Waigand (Waigand) sexually assaulted her by groping her in front of co-workers. (Id.) On another occasion, Waigand told Reidy: "If I wasn't married, we would be fucking all the time, wouldn't we?" (Id.) In addition, DOC employees keyed Reidy's car multiple times, (Id.), and gave her unfavorable work assignments when she refused to go on a date with a co-worker. (Id.) Plaintiff further asserts that her specific allegations are non-exhaustive. (Id. at ¶¶ 15, 17.) In sum, plaintiff asserts that repeated and pervasive sexual harassment created an objectively and subjectively hostile work environment. (Id. at ¶¶ 23-24.)

Reidy repeatedly filed sexual harassment incident reports with the DOC as a result of the severe and pervasive sexual harassment. (Id. at ¶ 16.) Reidy asserts that the reports were ignored. (Id. at ¶¶ 39, 42.) Finally, on or about May 18, 2011, Reidy cross-filed Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) alleging unlawful

4

discrimination and retaliation in violation of Title VII. (<u>Id.</u> at ¶¶ 6, 18, 25.) Plaintiff asserts that, as a result, DOC employees retaliated against her by escalating the existing pattern of sexual harassment. (<u>Id.</u> at ¶¶ 18, 32.) Reidy asserts that the DOC work environment became so intolerable that her resignation in February 2012 was a constructive discharge. (<u>Id.</u> at ¶ 20.)

### III.

Defendant now moves to dismiss the Amended Complaint, arguing that each count fails to state a claim upon which relief could be granted. (Doc. #31.) Reidy responds that all counts are adequately pled. (Doc. #33.) The Court will address each count in turn.

**A.  Title VII Discrimination (Count I)**

Count I alleges unlawful discrimination by the DOC, its agents and employees in violation of Title VII via the creation of a hostile work environment. "Title VII prohibits the creation of a hostile work environment." <u>Vance v. Ball State Univ.</u>, 133 S. Ct. 2434, 2441 (2013). To establish a prima facie case of hostile working environment premised upon sexual harassment, the plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to "unwelcome" sexual harassment; (3) she was harassed based on her sex; (4) the harassment affected a term, condition, or privilege of employment in that it was sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment; and (5) the employer is liable for the harassment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

### 1. Membership In A Protective Class

Reidy has adequately pled that, as a woman, she is a member of a protected class. See Henson v. City of Dundee, 682 F.2d 897, 903 (11th Cir. 1982) ("As in other cases of sexual discrimination, this requires a simple stipulation that the employee is a man or a woman."). Accordingly, this element of the prima facie case is adequately pled.

### 2. Unwelcome Sexual Harassment

The definition of sexual harassment under Title VII is well established. "The E.E.O.C. regulations helpfully define the type of conduct that may constitute sexual harassment: sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . ." Henson, 682 F.2d at 903 (quoting 29 C.F.R. § 1604.11(a)).

Here, Reidy asserts that on multiple occasions, her supervisors, Sergeant Nazario (Nazario) and Lieutenant Havens (Havens), asked her to "wear a white t-shirt when it rained so that they could see her breasts." (Doc. #28 at ¶ 15.) Reidy asserts that a co-worker, Waigand, groped her in front of co-workers, and that another co-worker, Corrections Officer Lance Henderson (Henderson), demeaned her and gave her unfavorable work

6

assignments because she repeatedly refused to go on a date with him. (Id.) Plaintiff further recites a litany of her supervisors' and co-workers' derogatory and sexually explicit verbal and physical conduct. (Id.) Taken as true, these specific, factual allegations unambiguously constitute sexual harassment.

Furthermore, Reidy adequately pleads that her co-workers' conduct was unwelcome. Plaintiff states that she directly told her co-workers that she objected to their conduct, and she alleges that she filed multiple incident reports protesting her co-workers' behavior. (Id. at ¶¶ 15-16.) Accordingly, this element of the prima facie case is adequately pled.

### 3. Harassment On Account Of Plaintiff's Sex

"In proving a claim for a hostile work environment due to sexual harassment . . . the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment." Henson, 682 F.2d at 904. "In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion." Id. "It will therefore be a simple matter for the plaintiff to prove that but for her sex, she would not have been subjected to sexual harassment." Id.

Here, Reidy asserts that various DOC employees explicitly told her that male co-workers targeted her, along with other female corrections officers, because of her sex. (Doc. #28 at ¶ 15.)

7

Plaintiff asserts she was told that "every single female that has ever worked this shift with Nazario, Henderson, and Davis has been run off. They have harassed every one of the women to the point where they couldn't take it anymore." (Id.) These assertions, considered alongside the alleged sexualized verbal and physical conduct of Reidy's co-workers, adequately allege that Reidy was harassed on account of her sex.

### 4. Severe And Pervasive Discrimination

"Although Title VII's prohibition of sex discrimination clearly includes sexual harassment, Title VII is not a federal 'civility code.'" Mendoza, 195 F.3d at 1245. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation and quotation omitted).

Rather, to establish the existence of a hostile work environment under Title VII, sexual harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mendoza, 195 F.3d at 1245-46. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "Likewise, if the

victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Id. at 21-22.

As detailed above, Reidy makes multiple allegations of repeated, demeaning, sexually explicit verbal and physical harassment by multiple supervisors and co-workers from the end of 2010 until her alleged constructive discharge on or about February, 2012. (Doc. #28 at ¶ 15.) Taken as true, these allegations show a long-lasting and wide-spread pattern of pervasive harassment that was both subjectively and objectively abusive. Accordingly, the Court finds that this element of is adequately pled.

### 5. Employer Liability

An employer is liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002). Where a supervisor's harassment of an employee "culminates in a tangible employment action," an employer is strictly liable. Pa. State Police v. Suders, 542 U.S. 129, 143 (2004). A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Vance, 133 S. Ct. at 2443 (quotation omitted).

9

Constructive discharge is an adverse employment decision. Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 n.2. Additionally, even if a supervisor's harassment of an employee does not culminate in a tangible employment action, the employer will nonetheless be vicariously liable for the supervisor's actions unless the employer can assert an affirmative defense. Suders, 542 U.S. at 145-46.

On the other hand, "[w]here the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." Miller, 277 F.3d at 1278. "Thus, a victim of coworker harassment must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer." Id.

Here, Reidy adequately pleads a tangible employment action. Reidy asserts that the ongoing sexual harassment at the DOC Camp "became so intolerable that any reasonable person . . . would have felt compelled to resign." (Doc. #28 at ¶ 20.) As a result, plaintiff asserts that she was constructively discharged when she resigned on or about February of 2012. (Id.) For the reasons discussed above, Plaintiff's specific allegations of sexual harassment plausibly support a charge of constructive discharge. Arbaugh v. Y&H Corp., 546 U.S. 500, 507 n.6 (2006) ("[C]onstructive

10

discharge compensable under Title VII includes an employee's departure due to sexual harassment that renders working conditions so intolerable that a reasonable person would have felt compelled to resign.") (quotation omitted). Accordingly, Reidy has plausibly pled that the DOC is strictly liable for the harassing conduct of her supervisors, or, in the alternative, that the DOC is vicariously liable subject to affirmative defenses. Suders, 542 U.S. at 143-46.

In addition, Reidy has plausibly pled that the DOC is liable for her co-workers' sexually harassing conduct because Reidy alleges she filed numerous incident reports with the DOC in which she objected to her co-workers conduct. (Doc. #28 at 16.) Assuming this is true, the DOC knew or should have known of the offensive, severe, and pervasive sexual harassment. If, as alleged, the DOC failed to take any remedial action, the DOC would be liable for its employees' conduct. Miller, 277 F.3d at 1278.

Accordingly, the Court finds that Reidy has adequately pled each element of her Title VII discrimination claim.

**B.   Title VII Retaliation (Count II)**

To assert a prima facie case of retaliation under Title VII, a plaintiff must show that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected

activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

The DOC's sole argument with respect to Count II is that Reidy has not alleged an adverse employment action. (Doc. #32, p. 5.) However, Plaintiff plausibly alleges that the DOC work environment became so intolerable that she was constructively discharged, (Doc. #28 at ¶ 20), which is undeniably an adverse employment action. Poole, 129 F.3d at 553 n.2. Accordingly, Count II will not be dismissed.

**C.   Negligent Retention (Count III)**

"Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." Degitz v. S. Mgmt. Servs., Inc., 996 F. Supp. 1451, 1461 (M.D. Fla. 1998). Additionally, as with any tort premised upon negligence, a plaintiff must allege facts which show that (1) the employer owed a duty to the plaintiff; (2) the employer breached that duty; (3) the breach proximately caused plaintiff's injuries or damages; and (4) the plaintiff suffered damages. Malicki v. Doe, 814 So. 2d 347, 361 & n.15 (Fla. 2002).

Concerning the first element, employers owe a duty to hire and retain safe and competent employees. Garcia v. Duffy, 492 So. 2d 435, 440 (Fla. 2d DCA 1986). That duty is owed, at the very

least, "to anyone legally on the employer's premises whose rights were trespassed against by the employee." Id. at 439. Reidy was a DOC employee and, therefore, was within the scope of the DOC's duty to retain safe and competent employees.

Turning to the second element, a breach occurs "where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." Malicki, 814 So. 2d at 362 (quotation omitted). Here, Reidy asserts that she repeatedly filed incident reports with the DOC, which placed the DOC on notice of its employees' offensive and tortious conduct. (Doc. #28 at ¶ 16, 37.) Reidy further alleges that the DOC failed to take any disciplinary or investigative action as a result of her reports. (Id. at ¶ 39.) Accordingly, Reidy has adequately alleged that the DOC breached its duty.

Concerning the third and fourth elements, Reidy alleges that as a result of the DOC's negligent retention, its employees were allowed to continue their offensive and tortious conduct, thereby causing her "embarrassment, anxiety, economic loss, humiliation, pain and suffering, loss of enjoyment of life and severe emotional distress." (Doc. #28 at ¶ 42.) Accordingly, Reidy has adequately alleged that she suffered damages as a direct result of the DOC's failure to discipline, discharge, or reassign its offending employees. In addition, "[u]nder Florida law, the underlying wrong

allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." Scelta v. Delicatessen Support Servs., Inc., 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999). Reidy meets this requirement as well because, as detailed above, her allegations plausibly state claims against her co-workers for battery and intentional infliction of emotional distress. (Doc. #28, ¶ 15.)

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Cause of Action (Doc. #31) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___13th___ day of August, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record